John M. Kelly
California State Bar No. 95169 (Inactive)
242 Turk Street #719
San Francisco, CA 94102
Mailing Address:
P. O. Box 423614
San Francisco, CA 94142
415-749-1276
Email: sfjmkelly@outlook.com

Plaintiff, In Pro Per

FILED
DEC 18 2020
SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT FOR

THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JOHN M. KELLY,<br><br>PLAINTIFF<br><br>VS<br><br>SAN FRANCISCO HOUSING AUTHORITY, a local municipal agency,<br><br>TONIA LEDIJU, SFHA ACTING EXECUTIVE DIRECTOR, in her official and individual capacities,<br><br>LINDA MASON (aka LINDA MARTIN-MASON), SFHA SUPERVISING ATTORNEY/GENERAL COUNSEL, in her official and individual capacities,<br><br>JOAQUIN TORRES, PRESIDENT, SFHA BOARD OF DIRECTORS, in his official and individual capacities,<br><br>DOES 1 through 10, inclusive,<br><br>DEFENDANTS. | CASE NO. CV20 9275 AGT<br><br>COMPLAINT FOR DECLARATORY AND PRELIMINARY & PERMANDNT INJUNCTIVE RELIEF TO REMEDY VIOLATIONS OF CONSTITUTIONAL AND STATUTORY RIGHTS INVOLVING THE TERMINATION OF FEDERAL HOUSING ASSISTANCE<br><br>1st, 5th & 14th Amendments of the United States Constitution<br><br>U. S. Housing Act of 1937, as amended [42USC § 1437, et seq.]<br><br>Rental Assistance Demonstration Statute (Federal Public Law No. 112-55)<br>28 U.S.C. §§ 2201 and 2202<br><br>42 USC § 1983 |

//

//

NOW comes Plaintiff John M. Kelly ("Plaintiff Kelly") alleging violations of his civil rights by Defendants, as follows:

**PRELIMINARY STATEMENT**

This is a case where a housing authority, its executive directors, other officers and officials, terminated, and upheld the termination, of the housing assistance, including housing assistance payments, for an elderly, almost eight-year tenant without advance written notice or the opportunity for a grievance hearing. This adverse action was based on dishonesty and pretext and done in almost immediate retaliation for the tenant's public criticism of the housing authority. The arbitrary termination of the tenant's housing assistance caused the tenant's homelessness and significantly limits and jeopardizes his ability to locate and maintain permanent housing, especially in his home town of San Francisco where he has resided for almost all his 77 years.

The despicable actions at issue constitute violations of the tenant's constitutional and statutory due process rights and violate the tenant's constitutional rights of free speech & petition. The actions were done with intentional and/or wanton disregard of well-established law; and the pretextual retaliatory motive is further shown by the housing authority's arbitrary and unlawful reversal of a hearing officer's decision in favor of the tenant following an extralegal post-termination grievance hearing.

**JURISDICTION AND VENUE**

1. Plaintiff Kelly brings this action pursuant to 42 U.S.C. §1983 for violations of civil rights under the First, Fifth and Fourteenth Amendments to the United States Constitution, as well as his due process rights under the Housing Act of 1937, as amended ("the Housing Act"), and federal Public Law No. 112-55, Rental Assistance Demonstration (RAD) statute.

2. The case presents a federal question within this Court's jurisdiction under Article III, § 2 of the United States Constitution and 28 U.S.C. §§ 1331 and 1343.

3. Declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202.

4. Venue is proper in this Court under 28 U.S.C. § 1391 because the parties reside in this District, and a substantial part of the events giving rise to this claim occurred in this District.

## PARTIES

5. Plaintiff Kelly is a citizen of the United States, San Francisco resident, and was at relevant times a tenant in federally-assisted, senior/disabled housing at the Clementina Towers in San Francisco, CA where Defendant San Francisco Housing Authority managed and administered tenant assistance programs.

6. Defendant San Francisco Housing Authority ("Defendant SFHA") is and was at all relevant times a local municipal agency authorized under federal and state law to manage and administer the public housing and the other housing assistance programs under the Housing Act in San Francisco, including at the Clementina Towers.

7. Defendant Tonia Lediju ("Defendant Lediju") is and has been since in or about November 2019, including at relevant times described in this Complaint, the duly appointed Acting Executive Director of Defendant SFHA with the main responsibility for the day-to-day management of Defendant SFHA, including the admission and retention of tenants and housing assistance participants, the termination of housing assistance payments, and the tenant grievance procedure.

8. Defendant Linda Mason, aka Linda Martin-Mason, ("Defendant Mason") is and was employed by Defendant SFHA during all relevant times as Supervising Attorney or General Counsel. In these positions, Ms. Mason supervises, administers and/or advises Defendant SFHA and its employees in various programs, including the admission and retention of tenants and housing assistance participants, the termination housing assistance payments, and the tenant grievance procedure.

9. Defendant Joaquin Torres ("Defendant Torres") is and was at all relevant times a duly appointed member and elected President of the Board of Directors of Defendant SFHA. Defendant Torres, as President of the SFHA Board of Directors, presides over monthly public meetings with Defendant SFHA's officers and employees and, with the Board of Directors, has general authority over the management of Defendant SFHA.[1]

---

[1] In this Complaint, Defendant SFHA, Defendant Lediju, Defendant Mason, and Defendant Torres will be referred to collectively as "Defendants."

10. Plaintiff Kelly is ignorant of the true names of Defendants named herein as Does 1 through 10, and, as a result, has named and sued such parties by fictitious names and will seek leave to amend this Complaint if the true names and identities of such Defendants are ascertained.

**OTHER RELEVANT ACTORS**

11. Barbara T. Smith ("Ms. Smith") was the duly appointed Acting Executive Director for Defendant SFHA from about April 2013 to about October 2019, including at relevant times described in this Complaint. During this time, she had the main responsibility for the day-to-day management of Defendant SFHA, including the admission and retention of tenants and housing assistance participants, the termination of housing assistance payments, and tenant grievances.

12. Sarah Ramler ("Ms. Ramler") was at relevant times described in this complaint the Director of Leased (Section 8) Housing at Defendant SFHA, and was responsible for its Leased Housing operations, including compliance with the rules and regulations of the U. S. Department of Housing & Urban Development (HUD) pertaining to the admission and retention of participants in Leased Housing (Section 8) operations and the termination of housing assistance payments.

13. Dianne Jackson McLean ("Ms. Jackson McLean") is an attorney with the law firm of Goldfarb, Lipman in Oakland, CA, and is and was at relevant times an attorney retained by Defendant SFHA who signed significant written communications related to this matter on behalf of Defendant SFHA and SFHA Acting Executive Directors Barbara Smith and Defendant Lediju.

**STATEMENT OF FACTS**

**Background**

14. Plaintiff Kelly was born in San Francisco in 1943 and has resided in San Francisco continuously since in or about 1954, except for two years in the U. S. Marine Corps (1965-67). He graduated from college (1973) and law school (1980) in San Francisco and has been mostly employed in San Francisco. He also has participated in community affairs, including volunteer work, in San Francisco since his graduation from high school in San Francisco (1962).

15. In or about January 2011, after about 2-3 years on the waiting list, Plaintiff Kelly was admitted to public housing at the Clementina Towers, which, at the time, was low-income public housing owned and managed by Defendant SFHA for seniors (age 62 and older) and disabled per-

sons. Plaintiff Kelly was admitted based on this age (68) and low income; and he received waiting list preference based on his military service. Pursuant to the Housing Act, the rent for Plaintiff Kelly and most tenants at the Clementina Towers was limited to 30% of their income.

### Clementina Towers Transition to Private Ownership

16. Public housing in San Francisco deteriorated during Defendant SFHA's ownership and management, including while Plaintiff Kelly was a tenant at the Clementina Towers. And in about 2016, Clementina Towers' tenants, including Plaintiff Kelly, were informed by Defendant SFHA, officials of the City and County of San Francisco, and others that the Clementina Towers would be transferred to a private organization under the RAD statute; and a new lease similar to the twenty-two page SFHA lease would be submitted to tenants. Then Acting Executive Director Smith sent a letter, dated February 8, 2016, to Clementina Towers' tenants, stating: **"No residents will lose their housing as a result of RAD"** (emphasis in original).

17. In or about October 2016, pursuant to the RAD statute, Defendant SFHA transferred ownership of the two 13-story Clementina Towers buildings to a private organization, the Clementina Towers Associates, L.P. ("CT Associates"). Housing Assistance Payment (HAP) contracts were signed by Defendant SFHA and CT Associates, covering the Clementina Towers units, including Plaintiff Kelly's. And under a ground lease, Defendant SFHA retained ownership of the grounds of the buildings and interest in management of tenant housing. CT Associates retained the Tenderloin Neighborhood Development Corporation (TNDC) for management of the housing at the Clementina Towers.

18. With the transfer of the Clementina Towers to private ownership under the RAD statute, tenants were no longer part of public housing and their tenancy was now covered by Section 8 of the Housing Act (42 U.S.C. § 1437f). The RAD statute (Proviso 13) states that a tenant participating in the RAD program "shall not be considered a new admission for any purpose...."

19. Prior to the transfer of ownership of the Clementina Towers, as described above in Paragraph (P) 17, Plaintiff Kelly and Defendant SFHA signed a document, dated June 20, 2016, stating Plaintiff Kelly "is eligible to participate in the Section 8 project-based voucher program of this PHA and is approved to occupy [his current unit at the Clementina Towers]."

20. Under the Housing Act and the RAD statute, Defendant SFHA administers the Section 8 housing assistance program at the Clementina Towers and the rent for most tenants, including Plaintiff Kelly, continued to be limited to 30% of their income.

21. In or about August 2016, TNDC distributed to Clementina Towers' tenants, including Plaintiff Kelly, a proposed new lease, which was 186 pages, more than 8 times the length of SFHA lease. Many tenants, including Plaintiff Kelly, objected to the new lease because of its length, complexity, high rent obligation, and, in Plaintiff Kelly's case, the lease's illegalities. Those tenants, including Plaintiff Kelly, who objected and did not sign the new lease (as is) were sent warning notices by TNDC (in September) stating that to continue their housing, the new lease must be signed, or refusal to sign would be "good cause" for termination.

22. The RAD statute (Proviso 13) states: "… the conversion of assistance under the demonstration shall not be the basis for re-screening or termination of assistance or eviction of any tenant family in a property participating in the demonstration …."

23. Plaintiff Kelly refused to sign TNDC's new lease (as is), as described above in P21, because he determined that the lease was substantially illegal, including (without limitation) a provision requiring tenant responsibility for the full contract rate [i.e., the tenant rent (30% of income) plus the government subsidy.] In Plaintiff Kelly's case, the contract rate under the proposed lease was $892.00, which was about 75% of his income. For some other Clementina Towers tenants, the contract rate was an even greater percentage of their monthly income or exceeded their monthly income.

24. Plaintiff Kelly informed Defendant SFHA, including Defendant Torres, about his complaints concerning TNDC's lease and TNDC's threats to tenants of loss of their housing, as described above in PP 21, 23. Defendants SFHA and Torres at no time denied the illegality of TNDC's proposed lease, but nonetheless took no known action against TNDC. Nor did Defendants SFHA and Defendant Torres take any known action to remediate TNDC's threats to tenants of loss of their housing for refusal to sign the TNDC lease. Defendants SFHA and Torres also refused Plaintiff Kelly's requests to investigate the alleged illegalities of the TNDC lease.

25. During the period October 2016 through October 2018, TNDC and its lawyers continued to threaten Plaintiff Kelly with the loss of his housing and eviction if he did not sign the TNDC lease as submitted to him. Plaintiff Kelly did sign and submit TNDC leases (as is) but only after deleting illegal provisions. TNDC did not sign any of its leases submitted to Plaintiff Kelly.

26. In or about December 2017, TNDC and Plaintiff Kelly began to engage in settlement negotiations concerning the terms of the TNDC lease. But in or about August 2018, TNDC served Plaintiff Kelly with a notice to quit based on his refusal to sign the TNDC leases. TNDC took no eviction action based on its notice to quit and subsequently withdrew it. Plaintiff Kelly kept Defendant SFHA mostly informed of the foregoing events.

**Defendants' Retaliation and Denial of Due Process**

27. On October 15, 2018, the San Francisco Chronicle reported that Defendant SFHA had incurred a $30 million deficit in its operations.[2] SFHA's public hearing (on October 30) concerning this deficit (and other matters) was conducted by Defendant Torres and attended by representatives of the San Francisco Mayor's Office on Housing, the press, Defendant Mason, then SFHA Acting Executive Director Smith, then SFHA Director of Leased (Section 8) Housing Ramler, and many others. Plaintiff Kelly in public comment criticized Defendant SFHA's deficit as "gross negligence or worse" and requested an investigation concerning the $30M deficit. His criticism was reported in the San Francisco Examiner on October 31. Also at the October 30 meeting, Plaintiff Kelly continued his complaints about TNDC's illegal lease, and the inaction by Defendant SFHA and Defendant Torres; and he stated he would be writing to San Francisco Mayor London Breed concerning the issue.[3]

28. As Plaintiff Kelly was leaving the October 30 meeting, as described in P27 above, Ms. Ramler requested to meet with him. The meeting took place on November 2 at Defendant SFHA's offices. Ms. Ramler's assistant, Will Daniels, was present with Ms. Ramler. Ms. Ramler threatened

---

[2] In fiscal year 2017-18, the total operating revenues for Defendant SFHA was $65.6 million, according to a Budget Analyst Report, dated September 9, 2019, to the San Francisco Board of Supervisors.
[3] In a KQED news report, dated October 17, 2018, Mayor Breed herself called Defendant SFHA "dysfunctional."

Plaintiff Kelly with the termination of his housing assistance payments and making him homeless if he didn't sign the TNDC lease. Ms. Ramler also stated Plaintiff Kelly would not be granted a grievance hearing on the issue.

29. Despite the past knowledge of Defendant SFHA, including Ms. Ramler and Defendant Mason, about the lease dispute between Plaintiff Kelly and TNDC, Defendant SFHA, including Ms. Ramler and Defendant Mason, had never previously (before the November 2 meeting) threatened to terminate Plaintiff Kelly's housing assistance for refusal to sign TNDC's lease. Nor had Defendant SFHA, including Ms. Ramler and Defendant Mason, sent Plaintiff Kelly any written communication stating he must sign TNDC's lease. And although the possibility of Defendant SFHA's termination of Plaintiff Kelly's housing assistance had been discussed with him, Ms. Ramler had previously said Plaintiff Kelly would receive a grievance hearing if such event occurred.

30. In regards to Ms. Ramler's threat, as described in P28 above, Plaintiff Kelly responded at the meeting, stating he had signed the TNDC leases, as modified by him to eliminate illegal provisions. He provided Ms. Ramler with a copy of his last signed lease, informing her that only TNDC had not signed its own lease with him. Ms. Ramler said she was not an attorney but she would review his signed TNDC lease for compliance with HUD rules and regulations. The meeting then concluded. Ms. Ramler, however, failed to respond to Plaintiff Kelly on the issue concerning his signed lease's compliance with HUD rules and regulations.

31. In or about early December 2018, Defendant SFHA, by Ms. Ramler, terminated Plaintiff Kelly's housing assistance, including retracting the housing assistance payments for Plaintiff Kelly since TNDC took over management of the Clementina Towers in or about October 2016. The reason stated for the termination: "After file audit, it was found that SFHA did not receive a lease, PBV addendum, or RAD rider from Mr. Kelly. … Therefor, (sic) he is not eligible for the RAD subsidy based on not fulfilling program requirements." No written notice by Defendant SFHA was provided to Plaintiff Kelly before the termination of his housing assistance; and he did not learn of the termination until informed by TNDC in late December 2018, as discussed in P33 below.

32. By letter, dated December 17, 2019, Plaintiff Kelly made a complaint to Defendant Torres, as SFHA Commission President, and the Board of Commissioners concerning Defendant

SFHA, and in particular Ms. Ramler. The complaint requested that Ms. Ramler's threat to terminate Plaintiff Kelly's housing assistance payment be withdrawn and Ms. Ramler be reprimanded because the threat to terminate his housing assistance payments was illegal and Ms. Ramler's conduct threatening to terminate the housing assistance payments and to make Plaintiff Kelly homeless was illegal, dishonest, unprofessional and rude. There was no response to Plaintiff Kelly's December 17 letter; and Defendant Torres took no known action to prevent the other adverse actions by Defendants in terminating Plaintiff Kelly's housing assistance, as described below.

33. On or about December 20, 2018, Plaintiff Kelly received a letter, dated December 20 2018, from TNDC, stating that TNDC had been informed by Defendant SFHA that Plaintiff Kelly was not eligible for housing assistance payments and had retracted all such payments to TNDC for the period November 1, 2016 through December 2018. TNDC's December 20 letter demanded payment by Plaintiff Kelly for these retracted payments in the amount of $15,302 by December 30, 2018. Plaintiff Kelly did not believe he was legally obligated to pay the $15,302 in retracted housing assistance payments and so informed TNDC by letter, dated December 30, 2018. Nor could Plaintiff Kelly afford to pay these amounts.

34. By hand-delivered letter, dated December 27, 2018, to Defendant SFHA, Plaintiff Kelly informed Defendant SFHA about TNDC's December 20 letter, as described in P33 above, and requested (a) rescission of the termination of his housing assistance subsidy, (b) appropriate notice for such action, and (c) a grievance hearing should such action be maintained. By letter, dated January 25, 2018, Defendant SFHA denied Plaintiff Kelly's request because "SFHA had not issued you a Notice of <u>Proposed</u> Decision to Terminate Section 8 assistance" (emphasis added).

35. In January 2019, TNDC served Plaintiff Kelly with an eviction notice for nonpayment of rent and filed an unlawful detainer action against him. On February 4, Plaintiff filed his answer to the complaint. On March 4, 2019, a California Superior Court Judge approved a settlement agreement between TNDC and Plaintiff Kelly. Under the terms of the settlement, Plaintiff Kelly agreed to move out of his apartment at the Clementina Towers by June 30, 2019 and TNDC agreed to waive all rent due from Plaintiff Kelly for the period October 2016 through June 30, 2019 (approx.

$10,399). Plaintiff Kelly believed he could have prevailed in the unlawful detainer action, but felt compelled to agree to the settlement rather than risk an eviction on his record.

36. On or about February 4, 2019, Defendant SFHA issued to Plaintiff Kelly the following: "Notice of <u>Proposed</u> Decision to Deny Eligibility or Terminate Section 8 Assistance" (emphasis added). This Notice provided Plaintiff Kelly with the opportunity for a hearing "to dispute the proposed decision to terminate …." And on or about February 18, 2019, on the form provided, Plaintiff Kelly requested a hearing, disputing the "proposed" decision and denying his alleged ineligibility for Section 8 Assistance and protesting the failure of Defendant SFHA to provide a hearing before the termination of his Section 8 assistance payments, as required by federal law.

37. On or about May 16 and June 3, 2019, Defendant SFHA held a grievance hearing based on Defendant SFHA's Notice and Kelly's hearing request, as described in P36 above. Over Plaintiff's objection, the hearing was conducted by a hearing officer solely chosen and paid by Defendant SFHA. Prior to the hearing on June 3, Plaintiff Kelly stated his intention to move to dismiss SFHA's Notice on the grounds that federal law required a pre-termination hearing before Section 8 housing assistance payments could be terminated. Subsequently supported by Defendant Mason, who was Defendant SFHA's representative at the hearing, the hearing officer preemptively ruled that the hearing did not concern the termination of Plaintiff Kelly's housing assistance payments, but, instead, only concerned Plaintiff Kelly's termination from the Section 8 program based on the lack of a signed lease. Defendant Mason stated Plaintiff Kelly would not be granted a hearing on the termination of his housing assistance payments. It was her position, supported by the hearing officer, that termination of housing assistance payments did not require a hearing by Defendant SFHA because such termination was merely administrative. Plaintiff Kelly argued to the contrary, but to no avail.

38. On or about June 17, 2019, the hearing officer issued a 34-page decision in which she "overturned" "Defendant SFHA's Notice of Proposed Decision to Deny Eligibility or Terminate Section 8 Assistance issued to John Kelly on February 4, 2019." The decision stated (in part): "The SFHA has not proven, by a preponderance of the evidence, that failing to sign a lease is a ground for termination of participation or denial of eligibility in its Section 8 program."

39. In accordance with the court-approved settlement agreement, as described in P35 above, Plaintiff Kelly moved out of his apartment at the Clementina Towers on June 30, 2019. He was homeless from that time to about October 28, 2019, either in communal housing or on the streets.

40. With the assistance of the U. S. Department of Veterans Affairs ("VA"), Plaintiff Kelly obtained temporary housing with the Salvation Army in San Francisco on or about October 28, 2019. This housing is subject to Plaintiff Kelly's agreement to continue to search for permanent housing and to relinquish the Salvation Army housing by October 27, 2021.

41. By letter, dated July 16, 2019, private attorney Dianne Jackson McLean, on behalf of SFHA Acting Executive Director Smith, stated the hearing officer's decision was reversed on the grounds that Plaintiff Kelly was "not eligible" to be a participant in the Section 8 program because he did not have a signed lease at the time of the Defendant SFHA's Notice. The July 16 letter relied on no legal authority to support the alleged ineligibility of Plaintiff Kelly, and no legal authority granting Ms. Smith the right to reverse the hearing officer's decision was stated.

42. In a 10-page letter, dated May 9, 2020, Plaintiff Kelly requested Defendant Lediju, as Defendant's new Acting Executive Director, to reconsider Defendant SFHA's decision to terminate his Section 8 housing assistance payments and participation in the Section 8 housing assistance program. If reconsideration was granted, the May 9 letter requested the award of a tenant-based Section 8 voucher.

43. In a one-page letter, dated June 1, 2019, lawyer Jackson McLean, "on behalf of the Authority" responded to Plaintiff Kelly's May 9 letter, as described in P42 above. The June 1 letter stated Plaintiff Kelly's request for reconsideration was denied, relying upon SFHA's letter, dated July 16, 2019, as described in P41 above, which determined Plaintiff Kelly was ineligible to participate in the federal Section 8 program due to the lack of a signed lease. The June 1 letter cited HUD regulation 24 CFR § 983.256(b) as sole legal authority for the determination of ineligibility.

44. By letter, dated June 20, 2019, addressed to Defendant Lediju, Plaintiff Kelly responded to SFHA's June 1 letter described above in P43. Plaintiff Kelly's June 20 letter stated SFHA's reliance on 24 CFR § 983.256(b) was "transparently false, because Section 983.256(b) concerns the mutual obligation of the tenant and the landlord to have a signed lease, but **nowhere** states this

obligation as an 'eligibility' issue" (emphasis in original). In addition, the June 20 letter cited and provided a copy of the HUD document, as described in P19 above, stating Plaintiff Kelly "is" eligible for the Section 8 program at the Clementina Towers. Based on the foregoing, Plaintiff Kelly's June 20 letter again requested Defendant Lediju to overturn SFHA's decision to terminate his housing assistance payments and participation in the Section 8 program and also grant a tenant-based Section 8 voucher to him.

45. Following Plaintiff Kelly's June 20 letter, as described above in P44, SFHA's private lawyer Ms. Jackson McClean and Plaintiff Kelly exchanged additional correspondence on the eligibility issue. And in Ms. Jackson McClean's last letter, dated July 24, 2019, "on behalf of the Authority," continued to deny Plaintiff Kelly's Section 8 eligibility but without reliance on 24 CFR § 983.256(b) or any other legal authority. Also, in a letter, dated July 14, Ms. Jackson McClean, "on behalf of the Authority," denied Plaintiff Kelly's request for a tenant-based, Section 8 voucher.

## **RATIFICATION**

46. By denying Plaintiff Kelly's request for reconsideration, as described above in PP42-5, Defendant Lediju ratified, and is therefore responsible for, the acts and conduct of Defendant SFHA, former Acting Executive Director Smith, Defendant Mason, and Leased Housing Director Ramler, as described in this Complaint.

## **PAST AND CONTINUING HARM**

47. The above-described actions, and failures to act, by Defendants proximately and intentionally caused Plaintiff Kelly's loss of Section 8 housing benefits, his homelessness and current lack of permanent housing. Defendants' motivation was to retaliate against Plaintiff Kelly for his criticisms, force his silence, and has the intended or unintended consequence of forcing him out of San Francisco due to Defendants' demonstrated vindictiveness and significant control over low-income housing in San Francisco. This retaliation motive is shown (in part) by (a) the timing of their actions (almost immediately after Plaintiff Kelly's criticisms), and (b) their deliberate denial of due process in the termination of his housing assistance, preventing him from timely defending himself against Defendants' demonstrably false charges. Without a Section 8 voucher, Plaintiff Kelly has little chance of remaining in San Francisco, his long-time home town.

## CAUSES OF ACTION

### I. VIOLATION OF FIFTH AND FOURTEENTH AMENDMENT RIGHTS & RIGHTS UNDER FEDERAL U. S. STATUTES

48. Plaintiff Kelly restates and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

49. Plaintiff Kelly's participation in the Section 8 Housing Choice Voucher program at the Clementina Towers was a property interest protected by due process under the Fifth and Fourteenth Amendments of the United States Constitution, the U. S. Housing Act of 1937, as amended [42 USC § 1437, et seq.], and Rental Assistance Demonstration Statute (U. S. Public Law No. 112-55).

50. Defendants, who acted under the color of state law, unlawfully deprived Plaintiff Kelly of his property rights, as described above in P49, by violating the due process requirements of the Fifth and Fourteenth Amendments of the U. S. Constitution, the U. S. Housing Act of 1937, as amended [42 USC § 1437, et seq.], and the Rental Assistance Demonstration Statute (U. S. Public Law No. 112-55). In this regard, Defendants acted intentionally or in wanton disregard of Kelly's due process rights, because they knew or should have known that (a) denial of a pre-termination hearing on Plaintiff Kelly's termination of housing assistance, including housing assistance payments, violated the foregoing federal laws and would result in the deprivation of his Section 8 housing benefits causing his homelessness.

51. In regards to the decisions of Defendants SFHA, Ms. Smith and Defendant Lediju finding that Plaintiff Kelly was not eligible for the Section 8 program at issue, such decisions violated Plaintiff Kelly's due process rights, as described above, because the decisions lacked substantial evidence to support them and were, in fact, factually false, stated without legal authority, and contrary to the decision of Defendant SFHA's own hearing officer.

### II. VIOLATION OF FIRST AND FOURTEENTH AMENDMENT RIGHTS

52. Plaintiff Kelly restates and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

53. In the following paragraphs, references to the First Amendment include the First Amendment as applied to the states through the Fourteenth Amendment of the U. S. Constitution.

54. Defendants' actions, which were done under the color of state law, constitute unlawful retaliation against Plaintiff Kelly in violation of his Free Speech & Petition rights under the First and Fourteenth Amendments of the U. S. Constitution. In this regard, Defendants acted vindictively in order to punish Plaintiff Kelly for his criticisms, by commencing retaliatory acts immediately after his criticisms and intentionally acting to deprive Plaintiff Kelly of his housing by disregarding federal law, as described in PP49-51 above,

**REQUESTS FOR RELIEF**

55. Declare that the due process provisions of the 5th & 14th Amendments to the United States Constitution, the Housing Act of 1937, as amended [42 USC § 1437, et seq.], and the Rental Assistance Demonstration Act (Federal Public Law No. 112-55), prohibit the termination of tenant Section 8 housing assistance payments (HAP) as administrative acts not requiring due process, including (without limitation) advance written notice of the proposed termination, the opportunity for a pre-termination hearing, and a pre-termination hearing under the law, if requested.

56. Declare that the due process provisions of the 5th & 14th Amendments to the United States Constitution, the Housing Act of 1937, as amended [42 USC § 1437, et seq.], and the Rental Assistance Demonstration Act (Federal Public Law No. 112-55), prohibit a housing authority's final determination of ineligibility of a tenant receiving Section 8 housing assistance payments (HAP) without providing the tenant with due process, including (without limitation) advance written notice of the proposed ineligibility decision, the opportunity for a pre-termination hearing, and a pre-termination hearing under the law, if requested.

57. Preliminarily and permanently require Defendants to withdraw Defendant SFHA's (a) termination of Plaintiff Kelly's Section 8 housing assistance, including (without limitation), his housing assistance payments, (b) decision finding Plaintiff Kelly ineligible for the Section 8 program, and (c) reversal of the hearing officer's grievance decision.

58. Preliminarily and permanently require Defendants to grant to Plaintiff Kelly a tenant-based, portable, Section 8 housing voucher for use in Plaintiff Kelly's search for permanent housing in San Francisco (and elsewhere); or, alternatively, a project-based voucher in housing comparable to his housing at the Clementina Towers in San Francisco, CA.

59. Preliminarily and permanently enjoin Defendants, Defendant SFHA officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of the injunction, from taking any action in denying Plaintiff Kelly's due process rights under the Fifth and Fourteenth Amendments of the U. S. Constitution, the Housing Act of 1937, as amended, and the Rental Assistance Demonstration program, including (without limitation) Plaintiff Kelly's right to advance written notice concerning termination of his Section 8 benefits under the Housing Act, the opportunity for an informal hearing, and a hearing under the law, if requested.

60. Preliminarily and permanently enjoin Defendants, Defendant SFHA officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of the injunction, from taking any retaliatory action against Plaintiff Kelly related to Plaintiff Kelly's exercise of his Free Speech & Petition rights under the First and Fourteenth Amendments of the U. S. Constitution, including, without limitation, Plaintiff Kelly's lawful criticism of Defendants and/or Defendant SFHA officers, agents, servants, employees and attorneys.

61. Award Plaintiff Kelly his costs and reasonable attorneys' fees[4] in this action;

62. Grant Plaintiff Kelly such other relief found to be just and proper by the Court.

Date: 12/18/20

Respectfully submitted,

_____
John M. Kelly
Plaintiff, In Pro Per

---

[4] Plaintiff Kelly is representing himself, and the request for attorney fees is in the event the Court's assigns pro bono counsel.